JUDGE SWEET



PREET BHARARA
United States Attorney
Southern District of New York
By:   BRIAN M. FELDMAN
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York   10007
Telephone No. (212) 637-2777
Facsimile No. (212) 637-2717
Brian.Feldman@usdoj.gov

11 CIV 6238

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | **ECF CASE** |
| Plaintiff, | **COMPLAINT** |
| -against- | 11 Civ. _____ |
| GPH MANAGEMENT, LLC, as owner of THE GRAMERCY PARK HOTEL, and RFR HOTEL GROUP, LLC, as operator of THE GRAMERCY PARK HOTEL, | |
| Defendants. | |

Plaintiff United States of America (the "United States"), by its attorney Preet Bharara, the

United States Attorney for the Southern District of New York, alleges as follows:

### Preliminary Statement

1.    The United States brings this civil action to redress discrimination on the basis of

disability in violation of Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42

U.S.C. §§ 12181 *et seq.*, and its implementing regulation, 28 C.F.R. Part 36.   As set forth more

fully below, the defendants operate a hotel in New York City, The Gramercy Park Hotel (the

"Hotel"), which is not in compliance with the ADA.

### Jurisdiction and Venue

2.      This Court has jurisdiction over this action pursuant to 42 U.S.C. § 12188(b)(1)(B) and 28 U.S.C. §§ 1331 and 1345.

3.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b).   The acts of discrimination alleged in this complaint occurred in this District, and the property that is the subject of this action is situated in this District.

### The Parties

4.      Plaintiff is the United States of America.

5.      Defendant GPH Management LLC is a New York limited liability company located in Manhattan, which owns the Gramercy Park Hotel, a hotel in New York City. Defendant RFR Hotel Group LLC is a Delaware limited liability company, which operates the Gramercy Park Hotel.   Defendants are a "public accommodation" within the meaning of Title III of the ADA because they own and/or operate the Gramercy Park Hotel, which is a place of public accommodation.   See 42 U.S.C. §§ 12181(7)(A), 12182(a); 28 C.F.R. § 36.104.

### Factual Background

6.      The Gramercy Park Hotel is a hotel located at 2 Lexington Avenue, New York, New York 10010.   The Gramercy Park Hotel is a "place of public accommodation" within the meaning of Title III of the ADA because its operations affect commerce and, among other things, it is "an inn, hotel, motel, or other place of lodging."   42 U.S.C. § 12181(7)(A); see 28 C.F.R. § 36.104

7.      A complaint was filed with the United States Department of Justice by a former guest of the Gramercy Park Hotel, alleging that the Hotel had discriminated against him on the

basis of his disability.   The complainant described himself as "profoundly deaf," explaining that he requires written text or sign language to communicate.   The complainant specifically alleged that during his first stay at the Hotel, he requested a Telephone Device for the Deaf ("TDD").   The complainant was told by the Hotel's general manager, in writing, that the Hotel did not possess this device because no one had asked for one in the past.   The complainant further alleged that during a second stay at the Hotel, he again requested a TDD, as well as additional visual notification equipment, such as a fire alarm light and a door knocker light, for his room. It took the hotel staff an hour to inform the complainant that they did not possess the requested visual notification equipment, and it was not until the next day that a supervisor admitted, again in writing, that the Hotel did not possess a TDD.   The complainant additionally alleged that the supervisor acknowledged that the Hotel's failure to provide the requested device violated the ADA.

8.        In response to this complaint, the United States Attorney's Office for the Southern District of New York (the "United States Attorney") informed Defendants that it would be conducting an investigation into whether the Gramercy Park Hotel was in compliance with the ADA and its implementing regulations.

9.        In response, Defendants advised the United States Attorney that it was about to commence planned renovations of the facilities.   Defendants represented that when the Hotel opened its doors to the public, after approximately fourteen months, it would be in full compliance with the ADA.

10.        The United States Attorney then conducted an initial, on-site inspection of the Gramercy Park Hotel to determine the extent of its non-compliance with the ADA and its implementing regulations.

11.     Having observed several violations in its inspection, the United States Attorney informed Defendants that the Gramercy Park Hotel was operating in violation of the ADA.

12.     In the course of a series of discussions between Defendants and the United States Attorney, Defendants represented to the United States Attorney that the planned renovations would bring the Hotel into compliance with the ADA.

13.     On January 29, 2009, after the last of the Gramercy Park Hotel's renovations had been completed, the United States Attorney again conducted an inspection of the building.   This investigation revealed not only that the Gramercy Park Hotel's renovations had failed to correct the original ADA violations detected in the initial United States Attorney inspection, but that the renovations had actually led to additional ADA violations.

14.     Numerous architectural barriers at the Gramercy Park Hotel prevent or restrict access to the Gramercy Park Hotel by individuals with disabilities.   42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. § 36.304.   The Gramercy Park Hotel's services, features, elements, and spaces are not readily accessible to, or usable by, individuals with disabilities, as specified by the Regulations promulgated under the ADA.   *See* ADA Standards for Accessible Design, 28 C.F.R. Part 36, App. D (the " 1991 Standards").   The Gramercy Park Hotel has failed to engage in readily achievable barrier removal, *see* 28 C.F.R. § 36.304; failed, in the course of making alterations, to ensure that the altered portions of the facility are readily accessible to the maximum extent feasible, *see* 28 C.F.R. § 36.402; and failed to ensure that the paths of travel to altered areas are readily accessible to the maximum extent feasible, *see* 28 C.F.R. § 36.403.

15.     Barriers to access that exist within the Gramercy Park Hotel include, but are not limited to, the following:

A.     **Guest Rooms**

4

i.  The Gramercy Park Hotel has provided an insufficient number of
accessible guestrooms for persons with hearing and speech
impairments. The Gramercy Park Hotel has a total of 185
guestrooms, and under the Standards, is required to have no fewer
than 14 rooms meeting the requirements of accessibility for such
persons as set out in section 9.1.3 of the Standards, *see* Standards §§
9.1.2, 9.1.3, 9.2.2(8).   The Hotel may alternatively satisfy this
requirement by providing no less than 14 portable kits that meet the
"equivalent facilitation" requirement of section 9.3.2 of the
Standards.   The Gramercy Park Hotel has provided no rooms that
meet these requirements, and provides only one portable kit that
meets the "equivalent facilitation" alternative requirement.

ii.  The Gramercy Park Hotel has left the best rooms in the house
inaccessible to persons with disabilities.   Accessible guest rooms
must be dispersed among the various classes of sleeping
accommodations, taking into consideration room size, cost,
amenities, and number of beds to ensure guests with disabilities
are provided with the same range of options as other guests at the
Hotel.   *See* Standards § 9.1.4.   The Gramercy Park Hotel makes
only two types of rooms accessible to persons with disabilities.
The Hotel fails to offer other types of accessible rooms, including
the best rooms in the house, such as the Gramercy Suites and the
Penthouse Suites.

iii.  The designated accessible King Loft rooms are not in compliance with the Standards.   Specifically:

1.  Door signage for the rooms does not have a "non-glare finish" and "characters and symbols [that] contrast with their background," as required by sections 4.1.3(16)(a) and 4.30.5 of the Standards.

2.  Maneuvering clearance on the latch side of the entry door for a forward pull approach is only 17 inches.   Clearance is required to be 18 inches.   *See* Standards §§ 9.2.2(3), 4.13.6, Fig. 25(a).

3.  Thermostat controls are located 59 inches above the finished floor. The maximum allowable height is 54 inches. *See* Standards §§ 9.2.2(5), 4.27.3, 4.2.6, and Fig. 6.

4.  Storage spaces in the rooms do not comply with the Standards.   The closet rod is 67 inches above the finished floor, whereas the Standards require that it be no more than 54 inches above the finished floor.   *See* Standards §§ 9.2.2(4), 4.25.3, 4.2.6, Fig. 6, Fig. 38(b).   Furthermore, the armoire door provided requires tight pinching to operate, whereas the Standards prohibit door hardware that requires tight pinching to operate.   *See* Standards §§ 4.25.4, 4.27.4.

5.  One full bathroom is not accessible within each unit as required by section 9.2.2(6)(e) of the Standards.

A.    The threshold in the rooms is three-quarters of an inch high, whereas the Standards require that a threshold be no higher than one half inch. *See* Standards §§ 4.1.3(7)(b), 4.13.8, 4.5.2.

B.    The toilet clear space is only 54 inches deep, whereas the Standards require the clear space to be at least 56 inches deep. *See* Standards §§ 9.2.2(6)(e), 4.23.4, 4.16.2, Fig. 28.

C.    The roll-in showers and bathtubs lack a fixed, folding seat, as required by Standards §§ 9.1.2, 9.2.2(6)(e), 4.23.8, 4.20.3, 4.21.3, Fig. 33, Fig. 34, Fig. 57(a).

D.    The low back-wall grab bar is eleven inches above the tub rim, whereas the Standards require that it be exactly nine inches above the tub rim. *See* Standards §§ 9.2.2(6)(e), 4.23.8, 4.20.4, Fig. 34.

iv.    The single designated accessible one-bedroom suite is not in compliance with the Standards. Specifically:

1.    Door signage for the room does not have a "non-glare finish" and "characters and symbols [that] contrast with their background," as required by sections 4.1.3(16)(a) and 4.30.5 of the Standards.

2.      Maneuvering clearance on the latch side of the entry door for
a forward pull approach is only 12 inches, but is required to
be at least 18 inches.   *See* Standards §§ 9.2.2(3), 4.13.6, Fig.
25(a).

3.      The maneuvering space in between the bed and the window
wall is only 34.5 inches, whereas the Standards require there
to be a maneuvering space of at least 36 inches in width
connecting all spaces and surrounding both sides of the bed.
*See* Standards §§ 9.2.2(1).

4.      Storage space in the rooms does not comply with the
Standards.   The closet rod is 67 inches above the finished
floor, whereas the Standards require that it be no more than
54 inches above the finished floor.   *See* Standards §§
9.2.2(4), 4.25.3, 4.2.6, Fig. 6, Fig. 38(b).   Furthermore, the
armoire door provided also requires tight pinching to
operate, whereas the Standards prohibit door hardware that
requires tight pinching to operate.   *See* Standards §§ 4.25.4,
4.27.4.

5.      Thermostat controls are located 60 inches above the finished
floor.   The maximum height permitted by the Standards is
54 inches. *See* Standards §§ 9.2.2(5), 4.27.3, 4.2.6, Fig. 6.

6.    The roll-in shower does not comport with certain guidelines. *See* Standards §§ 9.1.2, 9.2.2(6)(e), 4.23.8.

A.    The entrance to the shower is only 34 inches wide, whereas the Standards require that it be at least 36 inches wide.  *See* Standards § 4.21.2, Fig. 57(b).

B.    The roll-in shower has a curb that is two inches high, which is prohibited by the Standards. *See* Standards § 4.21.3, Fig. 57(b).

C.    The roll-in shower lacks a fixed, folding seat, as required by Standards §§ 9.1.2, 9.2.2(6)(e), 4.23.8, 4.20.3, 4.21.3, Fig. 33, Fig. 34, Fig. 57(a).

D.    The toilet grab bar is mounted only 52 inches from the rear wall, whereas the Standards require that it be mounted a minimum of 54 inches from the rear wall. *See* Standards §§ 9.1.2, 9.2.2(6)(e), 4.16.4, 4.23.4, Fig. 29(b).

**B.**    <u>**Hotel Entrances**</u>

i.    The Hotel lacks signage near its inaccessible entrances, marked with the International Symbol of Accessibility, indicating the route to a designated accessible entrance, whereas such signage is required by sections 4.1.2(7)(c), 4.1.6(1)(h), and 4.30.7 of the Standards.

ii.    The force required to open the interior vestibule door of the Hotel is 20 lbs, whereas the maximum allowable force prescribed by the

Standards is 5 lbs.   *See* Standards §§ 4.1.3(7)(a), 4.13.11(b).

**C.**   **Lobby Level Facilities**

i.   Two of the four unisex toilet rooms in the lobby level are not accessible, as the pictogram on the toilet signage is not accompanied by the equivalent verbal description below the pictogram, as mandated by the Standards.   *See* Standards, §§ 4.1.3(16)(a), 4.30.4.

ii.   Telephone counters are not accessible.   Specifically:

1.   Typical lobby telephone counters, which have a clear floor space that is 32 inches wide, are located in an alcove that is 28 inches deep, whereas the Standards provide that a counter with a 32-inch wide clear floor space must be located in an alcove with a maximum depth of 24 inches.   *See* Standards §§ 4.1.3(18), 4.32.2, 4.2.4, Fig. 4.

2.   Knee space provided under the typical telephone counter is 12 inches, whereas the Standards provide that it be at least 19 inches.   *See* Standards §§ 4.1.3(18), 4.32.3, Fig. 45.

3.   The typical counter top is 36 inches above the finished floor, whereas the Standards require that the counter top be between 28 and 34 inches above the finished floor.   *See* Standards §§ 4.1.3(18), 4.32.4.

iii.   There are an insufficient number of accessible telephones in the lobby.   There must be at least one public telephone that is "hearing

aid compatible." *See* Standards §§ 9.1.1, 4.1.3(17)(a), 4.31.5(1). The Gramercy Park Hotel has provided no such telephones.

iv.     Lobby telephones are not equipped with sufficient volume controls. There must be at least one public telephone with a volume control "capable of a minimum of 12 dbA and a maximum of 18 dbA above normal." *See* Standards §§ 4.1.3(17)(b), 4.31.5(2), 4.30.7. The Gramercy Park Hotel has provided no telephones with such volume controls.

**D.**     **Second Floor Amenities**

i.     Drinking fountains provided in the Hotel Aerospace Fitness Center and AeroSpa are not accessible to those who have trouble bending or stooping in violation of section 4.1.3(10)(a) of the Standards.

ii.     The spa toilet room and shower are not accessible. Specifically:

1.     The spa toilet room threshold is three-quarters of an inch high, whereas the Standards require that it be no greater than one half inch. *See* Standards §§ 4.13(7)(b), 4.13.8, 4.5.2.

2.     The spa toilet room's centerline is 19 inches from the wall, whereas the Standards require that it be exactly 18 inches from the wall. *See* Standards §§ 4.1.3(11), 4.22.4, 4.16.2, Fig. 28.

3.     The spa toilet room rear grab bar is only 32 inches long, whereas the Standards require that it be 36 inches long. *See*

Standards §§ 4.13(11), 4.22.4, 4.16.4, Fig. 29.

4.      The spa shower door requires tight pinching to operate,
        whereas the Standards mandate that door hardware must not
        require tight pinching to operate.  *See* Standards §§
        4.1.3(11), 4.23.8, 4.1.3(7)(b), 4.13.9.

5.      The spa shower partition is located within the shower clear
        floor space, whereas the Standards require a clear floor
        space adjacent to the roll-in shower that is 36 inches wide by
        60 inches deep.  *See* Standards §§ 4.1.3(11), 4.23.8, 4.21.2,
        Fig. 35(b).

6.      The spa shower has a 36-inch long grab bar on the back
        shower wall, which does not cover the length of the wall,
        whereas the Standards require the bar to cover the full length
        of the shower walls.  *See* Standards §§ 4.1.3(11), 4.23.8,
        4.21.4, Fig. 37(b).

iii.    At least one storage space in areas of public access must comply
        with the Standards' guidelines.  *See* Standards § 4.1.3(12)(a). The
        closet space in the Park Room East conference room does not meet
        these standards.   Specifically, it has a closet shelf that is 69 inches
        above the finished floor and a closet rod that is 64 inches above the
        finished floor, whereas the Standards require that such items be at
        most 54 inches above the finished floor. *See* Standards §§

4.1.3(12)(a), 4.2.6, 4.25.3, Fig. 6, Fig. 38(a),(b).

    iv.    The unisex toilet rooms have a lavatory support located in the toilet clear space, whereas the Standards require toilet clear floor space that is a minimum of 48 inches wide. *See* Standards §§ 4.1.3(11), 4.22.4, 4.16.2, Fig. 28.

    v.    The unisex toilet rooms' rear grab bars are only 24 inches long, whereas the Standards require they be at least 36 inches long. *See* Standards §§ 4.1.3(11), 4.22.4, 4.16.4, Fig. 29.

    vi.    The unisex toilet rooms' sign pictogram is not accompanied by the equivalent verbal description below the pictogram as required by the Standards. *See* Standards §§ 4.1.3(16)(a), 4.30.4.

**E.**    **Guest Room Corridors**

    i.    The room number signs in the guest room corridors have neither a "non-glare finish" nor "characters and symbols [that] contrast with their background," as required by the Standards. *See* Standards §§ 4.1.3(16)(a), 4.30.5.

    ii.    The guest room corridor fire extinguisher cabinet protrudes five and one half inches from the corridor wall and is mounted 44 inches above the finished floor to the leading edge, whereas the Standards require that objects projecting from their wall with their leading edges between 27 and 80 inches should protrude no more than four inches into a corridor. *See* Standards §§ 4.1.3(2), 4.4.1.

**F.**    **Roof Club & Gardens**

i.   The roof club and gardens are not connected to the building by at least one accessible route in violation of the Standards. *See* Standards § 4.1.3(1).

ii.  The route from the roof club meeting and reception rooms to the gardens is via a six-inch riser, whereas the Standards require that any level change greater than one half inch have a curb ramp, ramp, elevator, or platform lift. *See* Standards § 4.3.8.

iii. The counter in the reception room projects nine inches from the wall and is mounted 40.5 inches above the finished floor to the leading edge, whereas the Standards direct that objects projecting from the wall with leading edges between 27 and 80 inches should protrude no more than four inches into circulation paths. *See* Standards §§ 4.1.3(2), 4.4.1.

iv.  The men's and women's toilet rooms lack the directional signage indicating the route to the designated accessible toilet rooms required by the Standards. *See* Standards §§ 4.1.6(3)(e)(iii), 4.30.7.

v.   The unisex toilet room provided does not have either a 60-inch diameter turning space or a T-shaped turning space, as required by the Standards. *See* Standards §§ 4.1.3(11), 4.2.3, 4.22.3, Fig. 3.

vi.  The toilet centerline in the unisex toilet room is 19.75 inches from the wall, whereas the Standards require it be exactly 18 inches from

˅14˅

the side wall.  *See* Standards §§ 4.1.3(11), 4.16.2, 4.22.4, Fig. 28.

16.    It would be readily achievable for Defendants to remove some or all of the barriers to access.   Moreover, Defendants could have feasibly made some or all of the altered areas accessible during renovations.

17.    Defendants have failed to remove some or all of the barriers to access. Despite recent renovations to some or all of the areas containing these barriers to access, Defendants failed to make the altered portions of the Hotel readily accessible to maximum extent feasible and failed to ensure that the paths of travel to the altered areas were readily accessible to the maximum extent feasible.

## Claim for Relief

18.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 17 of this Complaint as if fully set forth in this paragraph.

19.    The ADA Standards for Accessible Design, 28 C.F.R. Part 36, App. D, provides the standards for determining whether a public accommodation is accessible in compliance with the ADA.

20.    Numerous violations of the ADA Standards for Accessible Design exist within the Gramercy Park Hotel that prevent or restrict access to the Gramercy Park Hotel by individuals with disabilities.   The Gramercy Park Hotel's services, features, elements and spaces are not readily accessible to, or usable by, individuals with disabilities, as specified by the Regulations promulgated under the ADA.   *See* Standards for Accessible Design, 28 C.F.R. Part 36, App. A.

21.    By failing to remove barriers to access, and by failing to bring the Gramercy Park Hotel into compliance with the Standards where it is readily achievable to do so, Defendants

˅15˅

have discriminated against individuals with disabilities in violation of sections 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and in violation of 28 C.F.R. § 36.304.

      22.    Defendants' failure to remove barriers to access, and Defendants' failure to bring the Gramercy Park Hotel into compliance with the Standards where it is readily achievable to do so, constitutes a pattern or practice of discrimination within the meaning of 42 U.S.C. § 12188(b)(1)(B)(i) and 28 C.F.R. § 503(a).

      23.    Defendants' failure, in the course of making alterations, to ensure that the altered portions of the facility are readily accessible to the maximum extent feasible, *see* 28 C.F.R. § 36.402; and failure to ensure that the paths of travel to, and the restrooms, telephones, and drinking fountains serving, altered primary function areas are readily accessible to the maximum extent feasible, *see* 28 C.F.R. § 36.403, constitutes a pattern or practice of discrimination within the meaning of 42 U.S.C. § 12188(b)(1)(B)(i) and 28 C.F.R. § 503(a).

      24.    Defendants' failure to remove barriers to access, and Defendants' failure to bring the Gramercy Park Hotel into compliance with the Standards where it is readily achievable to do so, constitutes unlawful discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

      25.    Defendants acted willfully and with reckless disregard for the rights of individuals with disabilities by engaging in the conduct described above, including by falsely promising the United States Attorney that the Gramercy Park Hotel would remove barriers to access during the renovation of the Hotel, and by engaging in renovation that both failed to remove barriers to access and created new barriers to access.

**Prayer for Relief**

WHEREFORE, the United States of America prays that this Court enter judgment:

A.  Declaring that Defendants have violated Title III of the ADA and its

implementing Regulations;

B.  Ordering Defendants to remove all violations of Title III of the ADA,

including, but not limited to, the violations set forth above;

C.  Awarding monetary damages to the aggrieved complainant to compensate

him for the discrimination he received as authorized by 42 U.S.C.

§ 12188(b)(2)(B); 28 C.F.R. § 36.504(a)(2);

D.  Assessing a civil penalty against Defendants as authorized by 42 U.S.C.

§ 12188(b)(2)(C); 28 C.F.R. § 36.504(a)(3), in an amount sufficient to

vindicate the public interest; and

E.  Granting such other relief as the interests of justice may require.

Dated:    New York, New York

September 2 , 2011

ERIC H. HOLDER
Attorney General

By:

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

PREET BHARARA
United States Attorney for the
Southern District of New York

17

By: _____
      BRIAN M. FELDMAN
      Assistant United States Attorney
      86 Chambers Street, 3rd Fl.
      New York, New York   10007
      Tel.:  (212) 637-2777
      Fax:  (212) 637-2717