

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

         Plaintiff,

-against-

GPH MANAGEMENT, LLC, as owner of THE GRAMERCY PARK HOTEL, and RFR HOTEL GROUP, LLC, as operator of THE GRAMERCY PARK HOTEL,

         Defendants.

**CONSENT DECREE**

11 Civ. 6238



WHEREAS, Plaintiff United States of America (the "Government") commenced this action to enforce the Americans with Disabilities Act of 1990 (the "ADA") against Defendants GPH Management, LLC ("GPH Management"), and RFR Hotel Group, LLC (the "RFR Hotel Group") (collectively, "Defendants"), pursuant to 42 U.S.C. § 12188(b)(1)(B), with respect to the Gramercy Park Hotel, a hotel located at 2 Lexington Avenue, New York, New York 10010 (the "Hotel");

WHEREAS, the complaint alleges that Defendants and/or their predecessors violated Title III of the ADA, 42 U.S.C. §§ 12181-89, and the Department of Justice's implementing regulations, 28 C.F.R. Pt. 36, by, among other things, failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the Hotel are readily accessible to and usable by individuals with disabilities; failing to remove architectural barriers to access where it is readily achievable to do so; failing to use readily achievable alternatives to barrier removal where barrier removal is not readily achievable; and by failing to reasonably modify policies, practices, and procedures to make the goods and services offered at the Hotel accessible to individuals with disabilities;

WHEREAS, the commencement of this action by the Government follows an investigation by the United States Department of Justice into a complaint filed by an individual (the "Aggrieved Party") who alleged that the Hotel violated the ADA by failing to accommodate his needs as a hearing impaired guest during visits to the Hotel in May 1996 and May 2004;

WHEREAS, following notification of the Government's investigation, Defendants and/or their predecessors substantially modified and altered the Hotel;

WHEREAS, the Government alleges that such alterations were not made in a manner that, to the maximum extent feasible, the altered portions of the Hotel were readily accessible to and usable by individuals with disabilities;

WHEREAS, Defendants have represented that the RFR Hotel Group was not the managing partner of GPH Management at the time such modifications and alterations were made, and that the RFR Hotel Group did not oversee those modifications and alterations;

WHEREAS, Defendants deny liability for any violation of Title III of the ADA with respect to the Hotel, and have consented to the entry of this Consent Decree without trial or adjudication of any issues of fact or law and without this Consent Decree constituting an admission by Defendants with respect to any such issue of fact or law; and

WHEREAS, the Government and Defendants agree that settlement of these matters without further litigation is in the public interest and that the entry of this Consent Decree is the most appropriate means of resolving these matters;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 12188(b)(1)(B) and 42 U.S.C. §§ 1331 and 1345.

2. Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the Hotel is located within this District and the acts of discrimination alleged in the complaint in this case occurred in this District.

## II. APPLICATION AND PARTIES BOUND

3. This Consent Decree shall be binding on Defendants, their agents, and their employees. This Consent Decree shall also be binding on all of Defendants' successors, and as well as any person or entity carrying on the same or similar use of the Hotel. Defendants must promptly notify, in writing, all successors, as well as any other persons or entities carrying on the same or similar use of the Hotel, of the existence of this Consent Decree and its contents.

4. The Hotel is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7) because, among other things, it is "an inn, hotel, motel, or other place of lodging." 42 U.S.C. § 12181(7)(A); *see* 28 C.F.R. § 36.104.

5. Defendants are governed by Title III of the ADA because, as owners and managers of the Hotel, they operate the Hotel, a place of public accommodation. *See* 42 U.S.C. § 12182(a); 28 C.F.R. § 36.104.

## III. FACILITIES COVERED BY THIS CONSENT DECREE

6. Except as expressly excluded from this Consent Decree, this Consent Decree shall apply to all public use and common areas within the Hotel, including, but not limited to, the

public entrance to the Hotel, the guest registration desk, the lobby, the public telephones, the public restrooms, the elevators, the units, sleeping rooms, and suites, and all routes into and within the Hotel connecting all such areas. This Consent Decree shall not apply to the private park called Gramercy Park located between Gramercy Park South, Gramercy Park North, Gramercy Park West, and Gramercy Park East.

7. This Consent Decree shall not absolve Defendants or any other person or entity from liability for any violation or potential violation of the ADA concerning any facility or establishment within the Hotel not expressly included within the coverage of this Consent Decree. Nothing in this Consent Decree shall preclude the Government from commencing or continuing any investigation with respect to any facility or establishment not expressly included within the coverage of this Consent Decree, including but not limited to Gramercy Park, and nothing in this Consent Decree shall preclude the Government from commencing a civil action against any person or entity with respect to any facility or establishment of the Hotel not expressly included in this Consent Decree's coverage.

## IV. GENERAL INJUNCTIVE RELIEF

8. Defendants shall not discriminate against individuals on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the Hotel.

9. Defendants shall provide individuals with disabilities an equal opportunity to benefit from the goods, services, facilities, privileges, advantages, and accommodations of the Hotel.

## V. DESIGNATED ACCESSIBLE GUEST ROOMS

10. The Hotel currently provides eight (8) rooms designated as accessible to persons with mobility impairments (the "Current Eight Designated Mobility Accessible Guest Rooms"), seven (7) of which are Loft Rooms with King Sized Beds, and one (1) of which is a One Bedroom Suite. All of the Current Eight Designated Mobility Accessible Guest Rooms are also designated as accessible to persons with hearing and speech impairments. In addition, the Hotel currently provides six (6) additional rooms that are also designated as accessible to persons with hearing and speech impairments (the "Six Additional Rooms"), each of which is a Loft Room with a King Sized Bed.

11. Defendants shall ensure that, within fifteen (15) months after the date of entry of this Consent Decree, or such later date as the parties may agree to in writing, the Hotel will substitute the following two rooms as designated accessible rooms for any two of the Current Eight Designated Mobility Accessible Guest Rooms: (a) one of the custom luxury suites marketed, as of March 7, 2011, as a "Deluxe Gramercy Suite"; and (b) one of the custom luxury penthouse suites marketed, as of March 7, 2011, as a "Penthouse Suite" (the "Designated Accessible Penthouse Suite"). As a result, the eight (8) rooms designated as accessible to persons with mobility impairments shall be six (6) Loft Rooms with King Sized Beds (the "Final Designated Mobility Accessible Loft Rooms"), one (1) Deluxe Gramercy Suite, and one (1) Penthouse Suite (collectively, the "Final Eight Mobility Accessible Guest Rooms").

12. Defendants shall ensure that the Final Eight Mobility Accessible Guest Rooms comply with the 1991 ADA Accessibility Guidelines for Buildings and Facilities, 28 C.F.R. Pt. 36, App. A (the "Standards"), for designated accessible rooms; provided, however, that, in lieu

5

of bringing the Designated Accessible Penthouse Suite into compliance with the mobility accessibility provisions of the Standards, the Hotel may bring into compliance with the mobility accessibility provisions of the Standards the One Bedroom Park Suite adjoining the Designated Accessible Penthouse Suite, including the doorway between the adjoining One Bedroom Park Suite and the Designated Accessible Penthouse Suite, so that a guest with a disability who reserves the Designated Accessible Penthouse Suite would be provided, at no additional cost, with a reservation of both the Designated Accessible Penthouse Suite and the adjoining One Bedroom Park Suite; and, if the Hotel so modifies the adjoining One Bedroom Park Suite, the Defendants shall have no obligation to modify any aspect of the Designated Accessible Penthouse Suite to comply with the mobility accessibility provisions of the Standards, except for its obligation to modify the doorway between the One Bedroom Park Suite and the Designated Accessible Penthouse Suite to ensure compliance with the mobility accessibility provisions of the Standards.

13. Defendants shall ensure that the Final Eight Mobility Accessible Guest Rooms, the Six Additional Rooms, and at least five other rooms (which are to be modified within eleven (11) months of entry of this Consent Decree, or such other date as the parties may agree to in writing) are accessible to persons with hearing and speech impairments by providing visual alarms, notification devices, and a TDD machine for each room, in accordance with Sections 9.1 and 9.3 of Standards and 28 C.F.R. § 36.303(c)-(d).

14. If the Hotel maintains portable kits to satisfy their obligations set forth in the preceding paragraph, then Defendants shall: (A) in each of the rooms listed in the preceding paragraph, provide an accessible, conspicuously labeled electrical outlet for portable visual

6

alarm devices that are connected to the Hotel's alarm systems, and provide an unobstructed electrical outlet within four feet of an unobstructed telephone connection for power to a free standing TDD; (B) train all appropriate Hotel reservations, check-in, and front desk staff regarding the room designations, their features and equipment, and the location of the kits; (C) maintain visual alarms, notification devices, and TDD machines in good working condition, by, among other things, acquiring appropriate contracts for service, maintenance, and proper repair of the telephone; and (D) install signs at the registration desk informing persons who are deaf, hard of hearing, or who have speech impairments of the availability of the TDD at the registration desk and in the guest rooms equipped for persons who are deaf, hard of hearing, or who have speech impairments.

## VI. **REMOVAL OF BARRIERS**

15. Defendants shall comply with their obligations to remove barriers under the ADA and pursuant to paragraphs 8 and 9 of this Consent Decree by removing barriers to access to and within the Hotel in the manner set forth below:

### A. **Lobby Telephone(s)**

16. Within six months of the entry of this Consent Decree, or such other date as the parties agree to in writing, Defendants shall ensure that there is at least one telephone in the Hotel lobby that is hearing aid compatible, in accordance with Sections 9.1.1, 4.1.3(17)(a), and 4.31.5(1) of the Standards, and which is equipped with volume control capable of a minimum of 12 dbA and a maximum of 18 dbA above normal.

17. If Defendants provide any additional telephones in the Hotel lobby, at least one other telephone, in addition to the one hearing aid compatible telephone required by the

7

preceding paragraph, shall be equipped with volume control capable of a minimum of 12 dbA and a maximum of 18 dbA above normal.

### B. The Designated Accessible Loft Rooms

18. Within eleven (11) months of the entry of this Consent Decree, or such other date as the parties agree to in writing, Defendants shall modify the Final Designated Mobility Accessible Loft Rooms as follows:

- a. Defendants shall provide room number signs with a non-glare finish and characters and symbols that contrast with their background;

- b. Defendants shall provide a minimum maneuvering clearance of 18 inches on the latch side of the entry door for a forward pull approach;

- c. Defendants shall lower the thermostats so that they are no higher than 54 inches above the floor;

- d. Defendants shall ensure that closet rods are provided that are no higher than 54 inches above the floor;

- e. Defendants shall replace the hardware on the armoire door with hardware that does not require tight pinching to operate;

- f. Defendants shall modify the thresholds within bathrooms so that they are no higher than half an inch and beveled with a slope no greater than 1:2;

- g. Defendants shall provide at least 56 inches of clear space around the toilet, in accordance with Sections 9.2.2(6)(e), 4.23.4, 4.16.2, and Figure 28 of the Standards.

8

  h.  Defendants shall provide fixed, folding seats in roll-in showers and bathtubs; and

  i.  Defendants shall modify roll-in showers to provide a depth of at least 30 inches;

  j.  Defendants shall adjust the low back wall grab bar to exactly nine inches above the tub rim.

 **C.** **Non-Designated Accessible Guest Room Doorways**

19. Within fifteen (15) months of the entry of this Consent Decree, or such other date as the parties agree to in writing, Defendants shall ensure that the following doors and doorways have a minimum clear opening of 32 inches: (1) all doors and doorways into and within all Hotel guest rooms, to the extent that the frames of such doors and doorways have been altered since January 26, 1992, and (2) all other Hotel doors or doorways required to be accessible by Section 4.1 of the Standards.

 **D.** **Hotel Entrance**

20. Within six (6) months of the entry of this Consent Decree, or such other date as the parties agree to in writing, Defendants shall provide, at the Hotel's main entrance, directional signage indicating the route to the nearest accessible entrance. Such signage must be identified with the International Symbol of Accessibility.

21. Within six (6) months of the entry of this Consent Decree, or such other date as the parties agree to in writing, Defendants shall adjust the Hotel's main inside entrance door, so that no more than 5 lbs of force is required to open the door.

 **E.** **Lobby Level Facilities**

22. Within fifteen (15) months of the entry of this Consent Decree, or such other date as the parties agree to in writing, Defendants shall modify the Hotel's lobby level facilities as follows:

    a. Defendants shall ensure that four common use toilet rooms are accessible;

    b. Defendants shall modify the toilet room signage to provide an equivalent text description below the pictograms;

    c. To the extent that Defendants provide any telephones in the lobby, they shall do so in compliance with the Standards.

**F. Second Floor Facilities**

23. Defendants' current redesign of the Hotel's second floor facilities (which Defendants currently estimate as fifteen (15) months from entry of the Consent Decree) shall ensure that the Hotel's second floor facilities are in full compliance with the Standards. In any event, no later than two years following entry of the Consent Decree, or such other date as the parties agree to in writing, Defendants shall modify the Hotel's second floor facilities, to the extent any such facilities remain, as follows:

    a. The water fountain must be a hi-lo water fountain;

    b. Defendants shall modify the threshold within the Spa Toilet Room so that it is no higher than half an inch and beveled with a slope no greater than 1:2;

    c. Defendants shall modify the toilet centerline within the Spa Toilet Room so that it is 18 inches from the wall;

    d.    Defendants shall replace the 32-inch grab bar in the Spa Toilet Room with a 36-inch grab bar;

    e.    Defendants shall replace the Spa Shower Room door with hardware that does not require tight grasping, tight pinching, or twisting of the wrist to operate;

    f.    Defendants shall provide a clear floor space adjacent to the roll-in shower that is 36 inches wide by 60 inches deep, and which is not obstructed in any way by the shower partition;

    g.    Defendants shall provide a grab bar along the entire length of the back shower wall;

    h.    Defendants shall lower the height of the closet shelves and closet rods within the storage space in the Park Room East so that they are no greater than 54 inches above the floor;

    i.    Defendants shall provide a minimum of 48 inches in width of clear floor space in the Unisex Toilet Rooms that is not obstructed by the lavatory support;

    j.    Defendants shall replace the 24-inch long rear grab bars in the Unisex Toilet Rooms with 36-inch long rear grab bars; and

    k.    Defendants shall modify the toilet room signage to provide an equivalent text description below the pictograms.

**G.**     **Guest Room Corridors**

24. Within six (6) months of the entry of this Consent Decree, or such other date as the parties agree to in writing, Defendants shall modify the Hotel guest room corridors as follows:

    a. Defendants shall provide room number signs with a non-glare finish and characters and symbols that contrast with their background; and

    b. Defendants shall provide cane detectable barriers below the alarm control devices, in accordance with Section 4.4 and Figure 8 of the Standards.

### H. Roof Club and Gardens

25. Defendants' current redesign of the Hotel's roof top facilities (which Defendants currently estimate as fifteen (15) months from entry of the Consent Decree) shall ensure that the Hotel's roof top facilities are in full compliance with the Standards. In any event, no later than two years following entry of the Consent Decree, or such other date as the parties agree to in writing, Defendants shall modify the Hotel's roof top facilities, to the extent any such facilities remain, as follows:

    a. Defendants shall provide a curb ramp, ramp, or platform lift, in accordance with Section 4.3.8 of the Standards, for the route between the Roof Club Meeting and Reception Rooms and the Gardens;

    b. Defendants shall provide a cane detectable barrier below the reception room counter, in accordance with Section 4.4 and Figure 8 of the Standards;

    c. Defendants shall provide directional signage indicating the route to the accessible toilet room;

  d. Defendants shall provide, in the Unisex Toilet Room, either a 60-inch diameter turning space or a T-shaped turning space, as required by the Standards; and

  e. Defendants shall modify the position of the toilet in relation to the side wall within the Unisex Toilet Room, so that the toilet centerline is 18 inches from the side wall.

## VII. POLICIES AND PROCEDURES

26. Defendants shall implement and enforce a written policy with regard to the ADA compliance at the Hotel. The Hotel's policy shall specify that accessible rooms may be rented to persons who do not have the corresponding disabilities only if all non-accessible rooms in the same class in the Hotel are occupied or reserved. In addition, the Hotel's policy shall specify that persons with disabilities may reserve accessible rooms in the same manner that guests may reserve other rooms. The Hotel shall enforce these policies with respect to all reservation practices under its control. As for reservations taken by entities not controlled by the Hotel, including internet booking engines, the Hotel shall satisfy its obligations under this paragraph by providing such entities with a copy of the Hotel's written policy.

27. Defendants shall ensure that, if a person with a disability requests a room at the Hotel in an advertised or otherwise available price range in which there are no accessible rooms available, that person must be given an accessible guest room in the next higher price range in which an accessible guest room is available. The more expensive guest room must be rented at the price of the room originally requested by the person with a disability.

28. Defendants shall ensure that the Hotel implements and enforces a written policy requiring that it will relocate persons without disabilities who occupy accessible rooms to other rooms in the event that other rooms of the same class become available and a person with a corresponding disability requests an accessible room, and no other accessible rooms are available. This policy shall not apply to the Penthouse, as it is the only room of its class.

29. In addition to the specific requirements set forth in the Consent Decree, Defendants agree to ensure that all accessible features within the Hotel are maintained in operable working condition, within the meaning of 28 C.F.R. § 36.211.

30. Defendants shall implement and enforce a written policy, providing that the Hotel will welcome persons with disabilities accompanied by service animals, as required by 42 U.S.C. § 12182(b)(2)(A)(iii), and 28 C.F.R. §§ 36.201 and 36.302 (2011).

## VIII. TRAINING

31. Defendants shall ensure that all staff members at the Hotel are trained in all ADA issues relevant to the Hotel, including, but not limited to: (1) the location and type of accessible guest rooms; (2) accessible features within each accessible room; (3) the location and use of accessible equipment, such as TDD machines, visual alarms, and notification devices; (4) all Hotel reservations polices and other policies regarding visitors with disabilities or accessible features; (5) the Hotel's service animal policy; and (6) all other requirements of this Consent Decree.

32. Defendants agree to take measures to ensure that employees of the Hotel comply with the obligations in the Consent Decree and shall use all of their powers to do so, including, but not limited to, using personnel actions, reprimands, or terminations of employment, to

address instances where an employee violates, or causes a failure to comply with, this Consent Decree.

## IX. DAMAGES AND CIVIL PENALTIES

33. Defendants shall pay ten thousand dollars ($10,000.00) in full and final settlement and satisfaction of any and all claims brought by the Government for monetary damages on behalf of the Aggrieved Party identified in Defendants' letter to the Government, dated March 21, 2005. Payment shall be made within thirty (30) days after the date of entry of this Consent Decree by check payable to the name of the Aggrieved Party. Such check shall be delivered to the following address:

> United States Attorney's Office
> Southern District of New York
> 86 Chambers Street, 3rd Floor
> New York, NY 10007
> Attention: Chief, Civil Rights Unit

34. Defendants shall pay twenty thousand dollars ($20,000.00) in full and final settlement and satisfaction of any and all claims asserted by the Government in this action for civil penalties. Payment shall be made within thirty (30) days after the date of entry of this Consent Decree by check payable to the United States Department of Justice. Such check shall be delivered to the address specified in the preceding paragraph.

## X. CERTIFICATION

35. One (1) month after the expiration of each of the various time frames specified in this Consent Decree, Defendants shall submit to the Government a certification, under penalty of perjury, stating that they have complied with all obligations of this Consent Decree that are required to be satisfied or completed at that time.

15

## XI. RIGHT TO REVIEW COMPLIANCE

36. The Government may review compliance with this Consent Decree at any time. Upon reasonable advance notice to Defendants (through undersigned counsel), Defendants shall permit the Government and any person acting on its behalf unlimited access to the Hotel to review compliance with the ADA and this Consent Decree, provided that such access does not interfere with the comfort, privacy or safety of the guests at the Hotel, or unreasonably interfere with the management and operation of the Hotel. If the Government believes that Defendants have violated this Consent Decree or are otherwise not in full compliance with the ADA, the Government will notify Defendants in writing and seek to resolve the matter amicably before applying to the Court for relief. Failure by the Government to enforce any provision or deadline of this Consent Decree shall not be construed as a waiver of its right to enforce other provisions or deadlines of this Consent Decree.

## XII. ALTERATIONS

37. Defendants agree that any alteration to the Hotel shall comply with the Standards to the maximum extent feasible, pursuant to 28 C.F.R. § 36.402. Defendants further acknowledge and agree that if an alteration affects or could affect the usability of or access to an area of the Hotel that contains a primary function, that alteration shall be made so as to ensure that, to the maximum extent feasible, the path of travel to the altered area and the restrooms, telephones, and drinking fountain serving the altered area are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, unless the cost and scope of such alterations is disproportionate to the cost of the overall alteration. In addition to the written notifications required herein, Defendants shall, on each anniversary date of this

Consent Decree, provide a written report to counsel for the United States of any alterations to the Hotel during the term of this Consent Decree commenced during the preceding calendar year and shall, in that notification, specify the steps taken to ensure that the alterations comply with the Standards to the maximum extent feasible.

### XIII. VIOLATION OF THIS CONSENT DECREE

38. A violation of this Consent Decree shall be deemed a subsequent violation of the ADA under 42 U.S.C. § 12188(b)(2)(C); 28 C.F.R. § 36.404(a)(3).

### XIV. MODIFICATION

39. There shall be no modification of this Consent Decree without the written consent of the Government and Defendants and the approval of the Court; provided, however, that the parties may agree in writing to extend the time frames specified in this Consent Decree (with the exception of the time frame specified in Part XVI).

### XV. ENTIRE AGREEMENT

40. This Consent Decree represents the entire agreement between the Government and Defendants. No prior agreements, oral representations or statements shall be considered part of this Consent Decree.

### XVI. RETENTION OF JURISDICTION

41. This Court shall retain jurisdiction of this action for a period of three (3) years from the date of the certification required by paragraph 35 of this Consent Decree to enforce or modify the provisions of this Consent Decree, to resolve any dispute that arises under this Consent Decree, and to entertain any application and issue any orders (including, without

limitation, orders directing the modification of policies, practices, and procedures, and orders requiring the removal of barriers to access) as may be necessary or appropriate for the effectuation of its terms. The parties shall discuss and attempt to negotiate a resolution of any dispute relating to the interpretation or enforcement of this Consent Decree before bringing the matter to the Court's attention for resolution.

## XVII. EXECUTION OF CONSENT DECREE

42. This Consent Decree may be executed in counterparts, each of which shall be an original and shall constitute one and the same instrument.

## XVIII. COSTS AND ATTORNEYS' FEES

43. All parties shall bear their own costs and attorneys' fees in this action.

THE PARTIES HEREBY CONSENT to entry of the foregoing Consent Decree:

Dated: New York, New York
       September 2, 2011

                                         PREET BHARARA
                                         United States Attorney for the
                                         Southern District of New York
                                         *Attorney for the United States of America*

By: /s/ Brian M. Feldman
      BRIAN M. FELDMAN
      Assistant United States Attorney
      86 Chambers Street, 3rd Floor
      New York, New York 10007
      Telephone No. (212) 637-2777
      Facsimile No. (212) 637-2717
      Brian.Feldman@usdoj.gov

Dated: New York, New York
       September __, 2011

                                         McDERMOTT WILL & EMERY
                                         *Attorneys for Defendants GPH Management*
                                         *LLC, and RFR Hotel Group LLC*

By: /s/ Banks Brown
      BANKS BROWN
      340 Madison Avenue
      New York, New York 10173-1922
      Telephone No. (212) 547-5488
      Facsimile No. (212) 547-5444
      Bbrown@mwe.com

19

JUDGMENT IS HEREBY ENTERED in accordance with the foregoing Consent Decree.

Dated: New York, New York
       _____, 2011

_____
UNITED STATES DISTRICT JUDGE